UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-00247-WYD

KIMBERLY ROBERTSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,[1]

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income under Title II of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-433. Plaintiff alleged disability due to multiple sclerosis and its related symptomology as well as low back pain associated with lumbar spondylolisthesis and spondylolysis.

Plaintiff was 51 years old when she filed her application and 53 years old on the date of the decision. She completed high school, a travel trade school in 1994, and two years of college studying animal science. (Transcript ["Tr."] at 78). Her past relevant work was as a pet groomer and trainer, marketing manager, food service manager, and travel agent. (*Id.* at 73.)

---

[1] Michael J. Astrue, the current Commissioner of Social Security, has been substituted for former Acting Commissioner Linda S. McMahon pursuant to FED. R CIV. P. 25(d)(1).

Her application, filed on March 31, 2004, alleged a disability onset date of October 31, 2003. (Tr. at 18, 67.) Her claim was initially denied on May 26, 2004. (*Id.* at 39-42.) Plaintiff then filed a request for an administrative hearing. (*Id.* at 38.) Following a hearing on October 20, 2005, the ALJ issued a Notice of Decision - Partially Favorable on January 13, 2006. (*Id.* at 14-25.) The decision granted Plaintiff a period of disability commencing on September 28, 2005, rather than the alleged onset date. This decision is discussed in more detail below.

In February 2006, Plaintiff appealed the portion of the decision that was unfavorable regarding the onset date to the Appeals Council. (Tr. 12.) The Appeals Council determined that there was no basis for changing the ALJ's administrative decision. (*Id.* at 5-9.)

II.  THE UNDERLYING DECISIONS

The ALJ issued a partially favorable and partially unfavorable decision. The ALJ found at steps two and three of the five step analysis that Plaintiff has severe impairments that do not meet or equal the Listings including the Musculoskeletal and Neurological Listings. (Tr. 24.) The ALJ further found that the Plaintiff's statements concerning her impairments and their impact on her ability to do work were not entirely credible. (*Id.*) At step four, he determined that the Plaintiff retained the residual functional capacity ["RFC"] to perform her past relevant work as a travel counselor as that job is generally performed prior to September 28, 2005. (*Id.* 25.) Since the ALJ denied the claim for the period of time before September 28, 2005 at step four of the analysis, there was no need to proceed to step five of the sequential analysis.

The ALJ also found, however, that since September 28, 2005, Plaintiff has not been capable of any sedentary employment as her non-exertional limitations substantially reduce the unskilled sedentary occupational base. (*Id.*) Accordingly, he found that since that date, she has been disabled. (*Id.*)

Plaintiff does not challenge the ALJ's findings at steps one through three that she has not engaged in substantial gainful activity since her alleged onset date; that she has "severe" impairments; and that she does not have an impairment that meets or equals the requirements of a Listing. Instead, Plaintiff asserts that she had a condition that is so functionally limiting that it has precluded any substantial gainful activity ["SGA"] since her alleged onset date of October 31, 2003. Thus, Plaintiff takes issue with the ALJ's findings that Plaintiff was not disabled prior to September 28, 2005.

B.  The Appeals Council's Decision

After the ALJ's decision was issued, Plaintiff tendered new and additional evidence for the Appeals Council to consider. (Tr. at 8.) The Appeals Council found no reason under its rules to review the ALJ's decision, even in light of the new evidence. (*Id.* at 5-7.) Accordingly, it denied Plaintiff's request for review. (*Id.*)

III. ANALYSIS

A.  Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

My review of the record reveals a number of errors that require the Commissioner's decision to be reversed and remanded for a rehearing. I address these below.

> B. Whether the ALJ's Finding that Plaintiff Was Not Disabled as of October 31, 2003, Her Alleged Onset Date, was Supported by Substantial Evidence
>
> 1. The ALJ's Relevant Findings

Plaintiff has alleged disability beginning October 31, 2003 due to a combination of impairments. The ALJ found that Plaintiff's disability did not start until September 28, 2005 when "the evidence shows that the claimant's medical condition declined such that she is no longer able to engage in even sedentary work activities due to the severity of her non-exertional limitations." (Tr. 18.)

The ALJ relied for this finding on a November 9, 2005 medical assessment of Dr. Baer, Plaintiff's treating physician. (*Id.* at 23.) The assessment stated that Plaintiff

was reduced to substantially less than a full range of sedentary work. (*Id.*) The ALJ stated:

> She [Dr. Baer] attributed these restrictions to progressive medical issues and spine-related complaints, noting that she last saw the claimant for these problems on September 28, 2005. See Exhibit 5F, p. 7. A review of Dr. Baer's clinical report of that date indeed reflects continued low back and right lower extremity complaints despite current physical therapy treatment. See Exhibit 5F, pp. 11 and 12. In addition, recent MRI findings of moderate C5-6 disc protrusion were noted. See Exhibit 5F, pg. 49.

(*Id.*) The ALJ also stated that Dr. Bentley provided a similar assessment on November 9, 2005, but that he gave greater weight to Dr. Baer's assessment. (*Id.*) He concluded that neither of the November 2005 assessments of Dr. Bentley or Dr. Baer "appeared to relate the claimant's limitations to a date any earlier than September 28, 2005." (*Id.*)

The ALJ found that prior to September 28, 2005, "the claimant could perform her past work as a travel counselor despite her medical impairments." (Tr. 23.)[2] He also found that "[w]hile the evidence supports the existence of the above stated impairments, the claimant's allegation that her impairments have produced symptoms and limitations of sufficient severity to prevent sustained work activity at all times since the alleged onset date is inconsistent with the evidence of record and is not considered fully credible." (*Id.* at 21.)

As support for his determination that Plaintiff was not disabled before September 28, 2005, the ALJ cited to medical evidence in the record including a consultative report from Dr. Quintero, and found that the medical evidence as a whole did not support any

---

[2] The ALJ found that during that time period, Plaintiff had the RFC "for lifting and carrying 20 pounds occasionally and 10 pounds frequently", sitting without limitation, standing and walking for less than 2 hours total in an 8-hour day, occasionally pushing and pulling with no appreciable manipulative limitations, occasionally balancing but never climbing, kneeling, crouching, crawling, or stopping, and avoiding exposure to temperature extremes. (*Id.* 21.)

greater restriction than found by Dr. Quintero. (Tr. at 21-22.) In so finding, the ALJ acknowledged that treating physician Dr. Bentley found that Plaintiff was disabled during that period. (*Id.* at 22.) He rejected Dr. Bentley's opinion, stating that "the absence in explanation or specific opinion on the claimant's ability to engage in work-related physical activities renders Dr. Bentley's comments . . . of little value in terms of assessing the claimant's capacity for work." (*Id.*) The ALJ further stated that Dr. Bentley was "therefore not entitled to the controlling weight of a treating physician and is instead given little weight on this issue as compared to the more reasoned and supported assessment of Dr. Quintero at Exhibit 4F." (*Id.*)

        2.    <u>Whether the Evidence Supports the ALJ's Finding that Plaintiff Was Not Disabled Prior to September 28, 2005</u>

The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Plaintiff argues that this rule was violated in this case. While the ALJ cited to Dr. Baer's September 28, 2005 office notes as support for his later onset date, Plaintiff asserts that his reasoning is flawed since the objective medical findings cited by the ALJ to support his decision were present as of October 31, 2003. In other words, it is argued that substantial evidence to support a finding of disability of the nature cited by the ALJ was present at the time of the alleged onset date. Plaintiff also argues that the ALJ violated the treating physician rule in determining what her RFC was prior to September 28, 2005.

I agree with Plaintiff that the ALJ did not properly weigh the medical evidence. I first address the report of Dr. Baer. The medical assessment of Dr. Baer which the ALJ

-6-

relies on to find disability commencing September 28, 2005 is part of a Unum Provident form sent to Dr. Baer for the purpose of determining Plaintiff's continued eligibility for Unum's disability benefit program. (Tr. 342-43.) Plaintiff testified that "as of December 31, 2004 we switched insurance companies so I had to switch doctors." (*Id.* 470.) Dr. Baer was the new doctor that Plaintiff switched to in 2005.

Plaintiff argues that the diagnoses that Dr. Baer lists on the first page include "Degenerative Spondylolisthesis Grade II L5/S1, L5/S1 fusion 7/04, MS, Neurogenic Bladder, Headaches/Migraines" (*id.* 342). I agree with Plaintiff that these are the same medical conditions that Robertson was being treated for since at least October 31, 2003. (*id.* 218-19, 230-31, 256, 258, 272-73). Second, I agree that Dr. Baer duplicated many of the tests that had previously been performed before December 31, 2004 by prior providers, particularly by Dr. Bentley. I address these in more detail below.

Turning to the prior medical evidence, I agree with Plaintiff that the ALJ improperly disregarded or ignored the evidence that supported the existence of Plaintiff's impairment since October of 2003. First, I address the opinions of Dr. Bentley, Plaintiff's treating physician at that time.

The ALJ states that he "acknowledges that Dr. Bentley, who treated the claimant on several occasions between November 2002 and March 2004, indicated twice in March 2004 and once in April 2004 that the claimant was not working and would not be able to work for an indefinite period due primarily to her low back problems. (Tr. at 22) (citing Exhibit 3F, pp. 8, 9). After initially noting a limited period of disability, to be further evaluated, Dr. Bentley opined in April 2004 that Plaintiff was currently disabled. (*Id.* 164.) The ALJ found that Dr. Bentley "did not offer any specific functional

restrictions, however, and the objective medical findings at that time do not support a disabling level of impairment." (*Id.*) He concluded as to Dr. Bentley:

> In sum, the absence in explanation or specific opinion on the claimant's ability to engage in work-related physical activities renders Dr. Bentley's comments at Exhibit 3F of little value in terms of assessing the claimant's capacity for work. He is therefore not entitled to the controlling weight of a treating physician and is instead given little weight on this issue as compared to the more reasoned and supported assessment of Dr. Quintero at Exhibit 4F. 20 C.F.R. 404.1527.

(*Id.*)

I first agree with Plaintiff that the ALJ appears to understate the amount of involvement that Dr. Bentley had in providing care for Plaintiff during the time at issue. Plaintiff testified that Dr. Bentley had treated her for "three and a half, four years" before she had to switch providers (Tr. 470), and she had seen him on at least seven occasions during the relevant time period. (Tr. 470.) Plaintiff also asserts that Dr. Bentley spoke with Plaintiff by telephone regarding ongoing medical problems on at least four occasions for the time period that records are available. Given the length of treatment, it was error for the ALJ to find that his opinions were not entitled to the controlling weight of a treating physician. *See Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) ("A physician's opinion is deemed entitled to special weight as that of a 'treating source' when he has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment,' taking into consideration 'the treatment the source has provided' and 'the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories'" (quoting 20 C.F.R. § 416.927(d)(2)(i), (ii)).

Second, as to the decision not to give Dr. Bentley's opinions controlling weight based on "the absence in explanation or specific opinion on the claimant's ability to engage in work-related physical activities", again I find that this is not supported by substantial evidence. While Dr. Bentley did not offer specific functional limitations during that time period, that is not required for an opinion to be given controlling weight. Instead, an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted).

Dr. Bentley stated several findings which support his opinion about Plaintiff's ability to work. Specifically, Dr. Bentley referred to "profound fatigue" that is "with her pretty much day in and day out" (Tr. 219); "I told her that with MS, she is going to have chronic health problems" (*id.* 166); and "I do think long term the issues that she is going to face are going to be related to her back and legs." (*Id.* 161.) Further, Dr. Bentley's March 12, 2004 office notes state that "[s]he is having severe LBP (low back pain) and still persistent MS symptoms." (*Id.* 164.) He found that Plaintiff was in "intractable pain" due to the lumbar spine problem and *t*hat she has "[l]ow back pain chronic mechanical, but progressive and limiting and this time." (*Id.* 162-63.) Dr. Bentley concluded, "I think she is currently disabled. I would like spine surgical consult as I think her back pain is quite significant in stopping her from pursuing normal everyday activities." (*Id.* 164.) A medical doctors's statements about Plaintiff's condition or impairments "are specific

medical findings". *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The ALJ errs in rejecting those opinions in the absence of conflicting evidence. *Id.*; *see also Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals).

Further, these findings were supported by clinical and laboratory diagnostic techniques. MRI results and CT scans document the existence of Plaintiff's impairments, the same impairments found by Dr. Baer. (Tr. 164, 270, 273, 275.) While the ALJ lists the MRI findings of the cervical spine ordered by Dr. Baer as support for his onset date (finding "[t]here was a left protrusion at C5-6 on the MRI") (Tr. 347), this is not a new medical finding or condition. The C5-6 disk protrusion was first identified in March 2003 when Plaintiff was a patient of the Kaiser health care system. (*Id.* 275.) The ALJ erred in disregarding or ignoring that evidence. Further, Dr. Brugman's records substantiated many of the findings of Dr. Bentley. (*Id.* 161-63).[3] Based upon the foregoing, I find that the reasons given by the ALJ in rejecting Dr. Bentley's opinion are erroneous and do not constitute substantial evidence to support the ALJ's finding that Plaintiff retained the RFC to perform her past work through September 27, 2005.[4]

---

[3] I address in the next section the ALJ's findings regarding Dr. Brugman, including his opinion that Plaintiff's problems got better after spinal surgery was performed.

[4] In arguing that the ALJ properly declined to give controlling weight to Dr. Bentley's conclusion of disability, the Commissioner argues that although Plaintiff's symptoms waxed and waned, Dr. Bentley considered Plaintiff's MS to be "very stable." *See* Def.'s Resp. Br. at 14 (citing to the transcript). I reject this argument. As Plaintiff notes in her reply brief, the finding of MS as "stable" from a medical perspective does not necessarily mean that her symptoms are controlled in a manner that would allow her to work regularly. It is undisputed that despite the notations of "stable" in the record, Dr. Bentley specifically opined that Plaintiff was disabled from her impairments and could not work. The Court cannot disregard this opinion of Dr. Bentley because Plaintiff's symptoms were in some instances noted to be stable. That would be an improper substitution of the Court's medical judgment for that of Dr. Bentley. Further, the ALJ

Further, even when an ALJ decides that a treating physician's opinions are not entitled to controlling weight, that does not allow him to reject the physician's opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). Instead, the opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). The ALJ's decision does not reflect that he gave deference to Dr. Bentley's opinions and weighed them, or that he gave "any consideration of what lesser weight the opinion should be given or discuss[ed] the relevant factors set out in [42 U.S.C.] § 404.1527." *Id.* Indeed, while the ALJ states that he gave "little weight" to Dr. Bentley's findings, it appears that he actually gave them no weight although this is unclear. This must also be addressed on remand. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'[A]n ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'" (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).

The AlJ also rejected Dr. Bentley's findings on the issue of disability asserting that this is an issue reserved to the Commissioner. (Tr. at 32.) While I agree that disability is an issue reserved for the Commissioner, Dr. Bentley's opinion on this issue still needed to be considered and weighed, particularly since those opinions were supported by specific symptoms which were clinically supported. *See Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. 2002) ("opinions from any medical

---

is not entitled to pick and choose portions of a doctor's findings that support his findings while ignoring those portions that do not.

-11-

source on issues reserved to the Commissioner must never be ignored . . . . The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability. . . ").

Given the evidence in the record which supported the existence of Plaintiff's impairments and the potentially disabling nature of those impairments prior to the onset date found by the ALJ, I also find that it was error for the ALJ to determine that Dr. Bentley and Dr. Baer's November assessments did not relate Plaintiff's impairments to a date any earlier than September 28, 2005. (Tr. 23.) Neither Dr. Bentley nor Dr. Baer were asked in their November assessments what the onset date was. Certainly Dr. Bentley's prior records would appear to suggest that he would have found an earlier onset date than September 28, 2005. Further, Dr. Baer's records are silent on the issue. The ALJ is not entitled to make speculative inferences from a medical report. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). If the reports were unclear on this issue, the ALJ should have contacted the treating physician to inquire about the onset date. *Id.*[5]

I now turn to Dr. Quintero's report. This report appears to be the only evidence in the record that was inconsistent with Dr. Bentley's opinions. While the ALJ stated that he gave great weight to ths report, it appears he actually gave it controlling weight in rejecting an earlier onset date than September 28, 2005. The ALJ stated that "the

---

[5] Further as to Dr. Bentley and Dr. Baer, I agree with Plaintiff that contrary to ALJ's intimation, the Unum Provident questionnaire and disability forms filled out by Dr. Baer were not the first disability insurance forms that were completed for disability coverage for Plaintiff. The record reveals that Plaintiff was meeting with Dr. Bentley "to look at STD" on approximately October 3, 2003. (Tr. 211.) Plaintiff also testified that she began receiving long term disability benefits in October 2003 and that her application for Social Security disability benefits was required by Unum as a condition of their continuing to pay her benefits. (*Id.* 468.) This needs to be considered on remand.

limitations offered by Dr. Quintero [on September 2, 2004] concerning the claimant's lower back do not appear unreasonable given contemporaneous medical records." (Tr. 21.) The ALJ did not state what "contemporaneous" medical records he was referring to, and I do not find Dr. Quintero's conclusions to be supported by any other evidence in the record. Thus, this finding by the ALJ does not appear to be supported by substantial evidence.

      Further, Dr. Quintero noted that:

[s]ince the year 2000, the patient has had increasing numbness on the right side. She developed muscle weakness primarily in the right leg. She has developed tremor in the right hand. She is aware of mild right-sided weakness. She fatigues easily and has to take rest periods during the day. She has had some pain in her right foot primarily in the arch. She denied having any visual disturbance. She has developed urinary urgency, frequency and occasional incontinence.

(Tr. 330.) Unlike Dr. Bentley, however, I agree with Plaintiff that it does not appear that Dr. Quintero considered any of Plaintiff's non-exertional limitations in determining her functional capabilities. In spite of finding that Plaintiff has chronic lower back pain and despite the other non-exertional limitations noted by Dr. Quintero, his opinion suggests that Plaintiff is capable of working an 8-hour day and 40 hour week. The ALJ also did not properly weigh the non-exertional limitations, as he stated that the evidence did not support "any greater functional restrictions than given by Dr. Quintero in September 2004." (*Id.* 22.) This is addressed in more detail below in the next section.

      I also note that on remand the ALJ must consider that the opinion of an examining physician or psychologist is entitled to less weight than that of a treating physician. *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d)(1), (2); Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2).

Further, since Dr. Bentley's opinion as a treating physician is inconsistent with Dr. Quintero's opinion, on remand the ALJ must examine Dr. Quintero's report to see if it outweighs Dr. Bentley's opinion, not the other way around.'" *Id.* (quoting *Goatcher*, 52 F.3d at 290).

In addition to relying on Dr. Baer's opinion to find the onset date of disability, the ALJ also listed "continued low back and right lower extremity complaints despite current physical therapy treatment" as support for his choice of onset date. (Tr. at 23.) Plaintiff argues, however, that she was also in a physical therapy program while a patient of Kaiser. Indeed, the record shows that Dr. Bentley gave her a home exercise program in December 2003 for low back pain and cramping of the muscles in the right foot. (Tr. 188.) On August 4, 2005, when Plaintiff was evaluated for a physical therapy program at University of Colorado Hospital "[s]he reports she has had physical therapy twice, and she did some exercises on the ball which made symptoms worse." (T. 349). Thus, I do not find that this finding by the ALJ necessarily supports the conclusion that Plaintiff became disabled only after September 27, 2005.

Based upon the foregoing, I conclude that the reasons given by the ALJ for the onset date commencing on September 28, 2005, are not supported by substantial evidence. Further, I find that the ALJ did not properly weigh the medical evidence. Accordingly, the case must be remanded for proper consideration of these issues.

> 2. <u>Whether the ALJ Erred In Failing To Properly Consider Plaintiff's Pain and Other Non-Exertional Limitations</u>

Plaintiff argues that the ALJ did not conduct a proper pain or credibility analysis. Specifically, it is argued that the ALJ did not consider all the factors required by *Luna v.*

*Bowen*, 834 F.2d 161 (10th Cir. 1984), and failed to apply the standard that there be only a "loose nexus" between claims of pain and an associated impairment. No medical provider opined that Plaintiff exaggerated her symptoms. Plaintiff also argues that the ALJ erred by not taking into account Plaintiff's excellent work history.

Turning to my analysis, I agree with Plaintiff that the ALJ failed to conduct a proper pain analysis and that the case must also be remanded on this basis. The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna*. There is a three-step inquiry. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992). The first step involves analyzing whether the claimant established a pain-producing impairment by objective medical evidence. *Id.* at 1376. If so, there must be an analysis of whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain. *Id.* If there is a loose nexus, all the evidence, both objective and subjective, must be considered to determine whether the claimant's pain is in fact disabling. *Id.*

In the case at hand, I agree with Plaintiff that there are objective findings in the record that provide a basis for her pain. For example, MRI results confirm white matter changes in the cerebral hemisphere, abnormal increased signal intensity in the thoracic cord at the T4-5 level, disk protrusion at C5-6. (Tr. 274.) Further, CT scan results confirm spondylolysis and spondylolithesis. (Id. 273.) The record certainly demonstrates a loose nexus between those impairments and Plaintiff's subjective allegations of pain. Accordingly, the ALJ was required to consider all the evidence in determining whether Plaintiff's complaints of pain were credible. This includes the medical data, any other objective indications of the degree of pain, subjective accounts

-15-

of the severity of the pain, "a claimant's persistent attempts to find relief for his pain", daily activities, "and the dosage, effectiveness, and side effects of medication." *Luna*, 834 F.2d at 165-66; *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

While the ALJ stated that he considered the appropriate factors, it does not appear that he actually did so based on the record.  For example, the medical records substantiate the complaints of pain. (*See, e.g.,* Tr. 161-64, 167, 183, 188, 268-69). Indeed, even the consultant Dr. Quintero that the ALJ gave great weight to credited Plaintiff's complaints of pain by diagnosing chronic low back pain, but the ALJ ignored this finding. (*Id.* 332.)  The primary basis for rejecting pain as a non-exertional limitation was the ALJ's conclusion that Plaintiff had little to no back pain after her surgery and that she was "progressing nicely since surgery." (*Id.* at 21.)  The ALJ relies for those findings on records from Dr. Brugman, who the ALJ found "indicated that he did not need to see the claimant again, and did not offer any functional restrictions." (*Id.*)  I find that the ALJ improperly engaged in a selective application of the evidence.  *See Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. 2004).

Specifically, while there is evidence from Dr. Brugman (his office notes from September 17, 2004) in which Plaintiff reported she no longer had any radicular pain and was walking three miles per day, the records also show that the improvement Plaintiff originally obtained from the July 2004 spinal surgery was short-lived.  Plaintiff testified that the initial improvement she experienced did not last. (Tr. 471.)  Upon questioning by the ALJ, Plaintiff testified that "after surgery for awhile it did feel like it was going to get better but it just degenerated from there and it's worse than it was."

(*Id.* 456.) Plaintiff testified that from October 31, 2003 until her surgery in July 2004, there were no days when she was pain free.  When asked to rate her pain on a scale from one to ten, for the time from October 2003 through July 2004, she testified that the pain was a 3 or 4 on the best of days and an "eight, nine, ten" on the worst of days with there being "probably two days a week" when the pain was at an eight, nine, ten.  (*Id.* 469.)

Plaintiff's testimony is consistent with the medical records from Dr. Bentley from 2003.  (Tr. 161-64, 167, 183, 188, 268-69).  Indeed, in November 2004, after the surgery, Dr. Bentley's notes state that Plaintiff reported:

> that her back pain is persistent, the left lower extremity is much improved, but she has pain with tingling and numbness in the right foot. She states that she has daily pain with a dull aching sensation in the low back. It is worse and sharp with a quick movement or coughing. Prolonged sitting makes this worse as well. . . . She complains of right foot and toe paresthesis and sometimes pain that radiates up to the ankle, and occasionally if she steps vigorously or turns, it seems to radiate all the way through the right lower extremity into the right lower back.

(Tr. 268-69.)  Further, there is a note from Dr. Brugman's records that Plaintiff called in September 2004 and reported that she is filling out disability papers because she is not able to sit without pain.  (*Id.* 398.)  Plaintiff also reported to Dr. Baer that she had been having worsening back and lower extremity pain in the last two or three years.  (*Id.* 355).  The ALJ improperly discounted or ignored this evidence.[6]

---

[6] Also, the ALJ correctly states that Dr. Brugman "did not offer any functional restrictions" for Plaintiff.  However, when Plaintiff last saw Dr. Brugman in September 2004, it appeared that the surgery had been successful.  As stated previously, there is evidence in the record that Plaintiff experienced renewed back pain and that the surgery was not ultimately effective in controlling Plaintiff's pain.

Finally, I note that "[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted). "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do . . . work." *Id.* The ALJ did not address this issue at all nor did Dr. Quintero, the consulting doctor that the ALJ gave great weight to.

I also note that the ALJ improperly disregarded the findings of fatigue in the record. The evidence of record establishes that in addition to the right lower extremity weakness and back pain, Plaintiff was experiencing a significant amount of fatigue from at least October 31, 2003 on. (Tr. 167, 181, 219, 231). Indeed, Plaintiff testified that she was unable to go 8 hours without laying down from November 2003 on and that one of the reasons she could not sustain work as of October 31, 2003 was the fatigue. (*Id.* 458, 467.) "Fatigue is a subjective symptom that the ALJ must consider." *Lozano v. Astrue*, 2008 WL 833153, at *1 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996)). In *Lozano*, the Ninth Circuit remanded the case to allow the ALJ to either incorporate fatigue into his RFC "or explicitly explain his reasons for declining to do so." *Id.* The ALJ also needed to consider Plaintiff's testimony that she suffered from fatigue as a side effect of her medications. *Id.*

Further, the evidence reveals other non-exertional limitations including a tremor in Plaintiff's right hand, right lower extremity weakness (with balance issues, tripping

and numerous falls), and occasional urinary incontinence (Tr. 167, 181, 188, 219, 230-31, 250, 259, 268-69).  These do not appear to have been properly considered.  Plaintiff also testified that when she working she "couldn't even focus because of the medications I was taking."  (*Id.* 457.)  She testified that between her broken sleep patterns, the medications she took, the pain levels and the symptoms of depression, her ability to concentrate since October 2003 was "not very good" and "again, I forget things."  (Tr. 475, 476.)  Further, Plaintiff testified to migraines about once a week that require her to need to lie down.  (*Id.* 461-62).  Finally, Plaintiff reported substantial limitations in the ability to sit.  No medical provider opined that Plaintiff exaggerated her symptoms.  "The ALJ must consider *all factors* that might have a significant impact on an individual's ability to work."  *Id.* (citing *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir.1993).  Further, the ALJ must address the impairments in combination, which it does not appear the ALJ did.  *Campbell v. Bowen*, 822 F.2d 1518 (10th Cir. 1987).  These need to be properly considered on remand.

Indeed, since the ALJ did not properly consider the medical evidence, the RFC must be reassessed on remand.  In doing so, the ALJ must assess not only Plaintiff's ability to obtain employment, but "the ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" that is relevant to the determination of disability.  See Soc. Sec R. 96-8p(1), 1996 WL 374184, at *1.  The phrase "regular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*  Further, as the Tenth Circuit noted, "'[a] finding that a claimant is able to engage in substantial gainful activity requires . . . a determination that the claimant can *hold* whatever job he finds for a significant period of time.'"

*Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (emphasis in original) (quotation omitted). In this case, the doctors who had the most knowledge of Plaintiff's medical and functional limitations did not feel that she had the capacity to perform substantial gainful activity on a sustained and continuous basis. This must be properly considered.

I also note that on remand, the ALJ should consider Plaintiff's excellent work history. *See Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2007) ("Where a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work") (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983)). While the Commissioner argues that Plaintiff is somehow less credible because she told her doctors she was trying to find part time work after her alleged onset date, this may actually make Plaintiff more credible. *Id*.

IV. CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated September 18, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge